E. F. MULLOY, Administrator, *vs.* JULIA C. PUTNAM, Administratrix, & others.

## October Term, 1873.

SET-OFF—DEFENSE.—It is no defense to a bill filed by an administrator to enforce a vendor's lien retained to secure a debt due to his intestate's estate, that he, as an attorney at law, had received from the defendant a note to collect and apply the proceeds to the payment of the debt secured by the vendor's lien, even if there were a failure (which is neither alleged nor shown) to collect under such circumstances as to charge him as attorney with the loss, especially if the contract to collect was made with the defendant as an individual, and the debt sought to be enforced by the bill is against an estate of which the defendant is the personal representative.

*E. F. Mulloy*, for complainant:
*John Reid*, for defendant.

THE CHANCELLOR:—On the 9th of November, 1867, the complainant, as administrator of A. G. Payne, deceased, filed his original bill in this court against A. W. Putnam and Julia C. Putnam, to enforce the vendor's lien on certain real estate sold by Payne to A. W. Putnam, and for the purchase-money of which the latter had executed to Payne several notes of $3,000 each, payable at different times. This bill was filed to enforce the lien upon the last of these notes. On the 30th of August, 1871, the complainant filed his amended bill against Julia C. Putnam as administratrix of A. W. Putnam, who had, in the meantime died, and others, claiming an unpaid balance on the purchase note falling due next before the last. On the 6th day of April, 1868, A. W. Putnam filed an answer for himself and Julia C. Putnam, which is very informal, and, without say-

ing anything about the complainant's claim, simply claims that he holds certain debts against A. G. Payne's estate. These debts were afterwards allowed against the estate, and are not contested. On the 25th of September, 1871, Julia C. Putnam, as administratrix of A. W. Putnam, filed her answer to the amended bill, admitting that a part of the purchase-money in controversy was unpaid at her father's death, how much she does not know, and insisting that, since his death, the balance of such purchase has been paid by E. B. McLanahan, "her agent and attorney." Afterwards, R. H. McEwen and wife, two other defendants, filed an answer which is sworn to on the 9th of January, 1873, but does not show the date of filing. In this answer it is insisted that a note sufficiently large to pay the debt due from Putnam to Payne, or nearly so, was put into the hands of complainant to be collected and the proceeds applied to the payment of said debt, and that complainant undertook and agreed to collect and apply the proceeds accordingly, and entered into writing to that effect. A formal answer was put in by the infant defendants.

Upon these pleadings no issue is made as to the right of the complainant to recover any unpaid balance due upon the notes mentioned in the original and amended bills. In the argument the learned counsel for the defendants suggested that the evidence threw a doubt over the right of the complainant to the note mentioned in the amended bill. Upon examination of the testimony, however, I think the complainant's right to this note is satisfactorily made out, and the circumstance of its omission from the original bill fairly explained. I have not thought it necessary to go at large into the consideration of the testimony, but will merely say that I have carefully re-read it since the cause was submitted. It has left no doubt on my mind that the note was deposited by complainant's intestate with the Union Bank as collateral security for some debt due by him to the bank, that payments were made on it while in possession of the bank, which doubtless satisfied the bank debt, and that com-

plainant is justly entitled to any balance remaining unpaid.

But the point principally relied on by the defendants is the one suggested in the answer of McEwen and wife, and that is, that a note sufficient to pay the debt, or nearly so, was put into complainant's hands to be collected, and the proceeds applied to the payment of the debt, and that complainant agreed in writing so to collect and apply the proceeds. Even this answer does not directly state that there was a failure to collect under such circumstances as to charge the complainant with the loss, but this is the position assumed in argument. The substance of the defense is that complainant, meaning E. F. Mulloy, administrator of A. G. Payne, agreed in writing to collect the note and apply proceeds. Conceding that the defense is well pleaded, its sufficiency will depend, in the first instance, upon the question of fact whether there was any such agreement as claimed. The evidence relied on consists of the following receipt:

" Nashville, April 6, 1868. Received from Julia C. Putnam, for collection, a note signed, etc.—describing it. Proceeds to be applied in payment of a note of A. W. Putnam to A. G. Payne, deceased."

(*Signed*)　　　　　　　　　E. F. MULLOY, *Attorney.*

This is the ordinary receipt of an attorney for collection, with the addition of a memorandum that the proceeds, when collected, are to be applied to the payment of a note of A. W. Putnam to Payne. It is not an agreement by the complainant as administrator of A. G. Payne to collect the note, nor does it purport to be an agreement to receive the note as collateral security. There is nothing in the receipt to implicate the estate of A. G. Payne, or connect it with the transaction. Nor is there any evidence independent of the writing, if such evidence were competent to add to the written instrument. As a matter of fact, therefore, the defendants have failed to show that the complainant as administrator of A. G. Payne, deceased, for that is the capacity in which he is complainant, ever did agree to collect the note in question. It is only by ignoring the substance, and in-

sisting upon the letter of the defense that a plausible argument can be made in support of it. That is, by insisting that when the answer says a note was put into the hands of complainant, it meant the individual E. F. Mulloy, not E. F. Mulloy, administrator. Such a construction does violence to the language used, not justified by any ordinary rule of interpretation. The learned counsel who argued the case for the defendants did not base his argument upon this construction. His argument went upon the ground that, as matter of fact, the contract as proven, bound the complainant, *as administrator*, to collect. In this view I cannot concur, the fact being clearly otherwise.

But suppose the language of the answer can be held to assert that the note was put into the hands of E. F. Mulloy as an attorney, and that he, as such attorney, agreed to collect the note and apply the proceeds to the note in his hands as administrator, would that agreement, sustained, as it may be conceded to be by the evidence, be a good defense to the bill, upon the further supposition that the note was lost by negligence in collecting? This could only be by showing that E. F. Mulloy's failure to do his duty as an attorney at law in the collection of the note, made the estate he represented as administrator liable for the loss occasioned by such neglect. But this has not been insisted upon by the learned counsel for the defense, and, it is to be presumed, will scarcely be insisted upon. He is not before the court in his individual capacity at all, and no redress, upon the pleadings as they now stand, can be had against him individually. If, therefore, a demand against him individually could, upon proper pleadings, be set off against a demand by him as an administrator — a point not necessary to be decided — there is no issue made to sustain such relief in this case.

As a further difficulty in the way of the defense made, the bill is by the complainant as administrator against the defendant, Julia C. Putnam, as administratrix of A. W. Putnam, while the receipt, upon which the defense rests, is

given to Julia C. Putnam in the lifetime of A. W. Putnam. If Mulloy has been guilty of negligence as an attorney, his liability is to Julia C. Putnam as an individual, not as administratrix. There is nothing in the pleadings or proof to show that the note was the property of A. W. Putnam, or that either he or his estate had any interest in the receipt. The effort,. therefore, is to relieve his estate from a just demand against it to the estate of A. G. Payne, by setting off against that demand a liability of E. F. Mulloy as attorney to Julia C. Putnam as an individual for negligence in collecting a note, the only link of connection—so far as appears —being the fact that E. F. Mulloy is also the administrator of A. G. Payne, and Julia C. Putnam the administratrix of A. W. Putnam. In the absence of authority, I cannot think such a link is sufficient.

I am of opinion, therefore, that the estate of A. G. Payne is not liable for any loss sustained by Julia C. Putnam, or the estate of A. W. Putnam, by reason of the failure of E. F. Mulloy, as attorney, to collect the note in controversy, if, indeed, he did fail to collect under such circumstances as to make himself liable for the loss. In this view, it becomes unnecessary to consider the question of such liability.